In re KROH BROTHERS DEVELOP-
MENT CO., Kroh Brothers Realty Co.,
Kroh Investments I, Inc., Kroh Broth-
ers Equity Co., Ward Parkway Corp.,
Kroh Telecommunities, Inc., Debtors.

KROH BROTHERS DEVELOPMENT
CO., Plaintiff/Appellee,

v.

KROH BROTHERS MANAGEMENT
CO., Defendant.

Donald W. Jones, Terry R. Jones, James
K. Phillips, Ralph N. Walters, Shirley
Baker, Vincent P. Dasta, Jr., August A.
Ruf, J.R. Clothier, James E. Chalfant,
Raymond W. Sonnenberg, Gary G. Mi-
chael, S.E. Wright, Lee V. Landon,
James A. Weber, Intervenors/Defen-
dants/Appellants.

Bankruptcy Nos. 87–00640–1–11, 87–
00641–1–11, 87–01263–1–11, 87–01265–1–
11, 87–01266–1–11 and 87–01930–1–11.
No. 89–0115–CV–W–6.

United States District Court,
W.D. Missouri, W.D.

Oct. 31, 1989.

Cory, Lipoff, Winston & Strawn, Chica-
go, Ill., James A. Polsinelli, James E. Bird,
Kansas City, Mo., for plaintiff.

Steven C. Block, as trustee of the estate
of John A. Kroh, Jr., Independence, Mo.,
David Achtenberg, as trustee of the estate
of George P. Kroh, Michael J. Gallagher,
Wassberg & Gallagher, Kansas City, Mo.,
for defendants.

## MEMORANDUM AND ORDER

SACHS, Chief Judge.

Appellants Jones and Associates appeal the order of the bankruptcy court, the Honorable Karen M. See, to retroactively apply the substantive consolidation of Kroh Brothers Development Company (KBD) and Kroh Brothers Management Company (KBM).

KBD, Kroh Brothers Equity Company, Kroh Brothers Realty Company, Kroh Brothers Investments I, Inc., Kroh Telecommunities, Inc. and Ward Parkway Corp. commenced voluntary Chapter 11 cases from February 13, 1987, through May 1, 1987. On February 25, 1988, KBD filed a complaint against KBM seeking substantive consolidation. "The power to consolidate is one arising out of equity, enabling a bankruptcy court to disregard separate corporate entities, to pierce their corporate veils in the usual metaphor, in order to reach assets for the satisfaction of debts of a related corporation." *In re Continental Vending Machine Corp.*, 517 F.2d 997, 1000 (2nd Cir.1975), *cert. denied*, 424 U.S. 913, 96 S.Ct. 1111, 47 L.Ed.2d 317 (1976). Notice of the complaint was sent to all persons or companies who might be interested. Jones and Associates (Jones) intervened.

After an evidentiary hearing at which Jones was represented, the court issued an order on June 14, 1988, which substantively consolidated KBD and KBM. The court birfucated the issues of consolidation and *nunc pro tunc* (retroactive) effect of consolidation, and Jones did not object to the consolidation itself. The court conducted a second hearing on August 26, 1988, on the issue of retroactive application only and received testimony from Donald Jones, who was a partner in Jones and Associates and also an executive with both KBD and KBM. On October 31, 1988, the court issued an order which applied the substantive consolidation retroactively to the date of KBD's bankruptcy filing. Jones appeals from the October order.

The *nunc pro tunc* application is significant. Jones was a limited partner in the Colorado limited partnership Park Place. KBM was the property manager of Park Place. On January 27, 1986, the property owned by Park Place was sold and Park Place was dissolved. On April 11, 1986, pursuant to the liquidation agreement, KBM, as property manager, paid Jones $125,000 as its share of the sales proceeds. The funds were paid from an account held by KBM. The significance of the retroactive application of the KBD/KBM consolidation is this: the transfer from KBM to Jones was not within a year of the consolidation order. It was, however, within a year of KBD's filing. Therefore, KBD, as debtor-in-possession, is able to pursue the money as an avoidable transfer under § 547 (preferences) and/or 548 (fraudulent transfers) of the Code. If the *nunc pro tunc* order had not issued, the transfer would have been outside the one year limit and not recoverable under those sections. The only issue before this court is the *nunc pro tunc* order; Jones does not present, and has waived, any objection to the consolidation itself.

▆▆▆ Jones' first point on appeal asserts that KBD, debtor-in-possession, had no standing to bring an action for substantive consolidation against KBD.[1]

Jones relies on *Mixon v. Anderson (In re Ozark Restaurant Equipment Co., Inc.)*, 816 F.2d 1222 (8th Cir.1987), *cert. denied*, 484 U.S. 848, 108 S.Ct. 147, 98 L.Ed.2d 102 (1987) (hereinafter *Ozark Restaurant*). In that case, the trustee brought an alter ego action on behalf of all creditors seeking to pierce Ozark's corporate veil and hold several third parties liable for Ozark's debts. *Id.* at 1223. The bankruptcy court found in the trustee's favor. The third parties appealed, asserting that the trustee lacked standing to bring such an action. The trustee claimed that jurisdiction existed

---

1. The procedural vehicle for Jones' challenge is a motion to dismiss for failure to state a claim. KBD argues that Jones has waived this argument by failing to object to the consolidation itself. Because standing is essential to jurisdiction, however, an objection to standing cannot be waived. *See, e.g., In re Weaver*, 632 F.2d 461, 462 n. 6 (5th Cir.1980).

based on three different areas of the Bankruptcy Code, all of which the court rejected.

First, the trustee argued that 11 U.S.C. §§ 704 and 541 allowed him to pursue any cause of action which belonged to the debtor. The court agreed but determined that Arkansas law allowed only third parties to bring an action to pierce the veil of a corporation. Since the corporation could not pursue such an action, the court concluded, the alter ego claim was not "property of the estate" under § 541. *Id.* at 1225. The trustee next argued that § 544, the "strong arm clause," gave him standing to pursue an alter ego action in his creditor's capacity. The court relied heavily on *Caplin v. Marine Midland Grace Trust Co.,* 406 U.S. 416, 92 S.Ct. 1678, 32 L.Ed.2d 195 (1972), and subsequent legislative activity in concluding that:

> Congress' message is clear—*no* trustee, whether a reorganization trustee as in *Caplin* or a liquidation trustee as in the present case, has power under Section 544 of the Code to assert general causes of action, such as the alter ego claim, on behalf of the bankrupt estate's creditors.

816 F.2d at 1228 (emphasis in original). The trustee's final argument was that 11 U.S.C. § 105 and equitable principles provided jurisdiction. The court wrote:

> It is true that Section 105 allows a bankruptcy court to apply equitable principles that are necessary or appropriate in a particular case to carry out the provisions of the Code. *See* 11 U.S.C. § 105. These powers, however, do not include the ability to award equitable relief where the party asserting the cause of action for such relief does not have standing under any other section of the Code.

816 F.2d at 1230. Jones argues that *Ozark Restaurant* prohibits a trustee[2] from bringing an action for substantive consolidation.

It is generally accepted that a bankruptcy court, in the exercise of its equitable powers, has the authority to substantively consolidate the estates of affiliated corporations. *See, e.g., In re Richton Intern. Corp.,* 12 B.R. 555 (Bkrtcy. S.D.N.Y.1981); *In re Flora Mir Candy Corp.,* 432 F.2d 1060 (2nd Cir.1970). Consolidation is appropriate " 'where the inter-relationships of the group are hopelessly obscured and the time and expense necessary even to attempt to unscramble them is so substantial as to threaten the realization of any assets for the creditors.' " *Matter of Lewellyn,* 26 B.R. 246, 251 (Bkrtcy.S.D.Iowa 1982), quoting *Chemical Bank New York Trust Co. v. Kheel,* 369 F.2d 845, 847 (2nd Cir. 1966). While the concepts and practical results may be similar, it has been stated that a substantive consolidation does not require piercing the corporate veil. *See In re Gluckin Company, Ltd.,* 457 F.Supp. 379 (S.D.N.Y.1978).

*Ozark Restaurant* addresses only the trustee's authority to commence an *alter ego* action to impose an obligation to creditors. The court had no occasion to consider whether a trustee could pursue a substantive consolidation motion enhancing the bankruptcy estate itself. Judge See points out the distinction between the two actions in her order applying the consolidation *nunc pro tunc:*

> The issue presented in this adversary proceeding is the complaint of KBD that the property of KBM was in fact its property, which allegation this Court concluded to be correct. This Court believes that there is not merely a distinction, but a real difference between the determination made here as to the ownership of property from a *alter ego* claim suggesting that another entity has acted in a manner to render itself liable for another's debts. Further, even if any *alter ego* allegations were to be stricken from KBD's Complaint, the Complaint still states a claim for substantive consolidation. Under section 105 of the Code and applicable bankruptcy law there exists

---

2. While KBD is technically a debtor-in-possession, its powers are, for present purposes, the same as those of a trustee. 11 U.S.C. § 1107(a).

For simplicity, the court will refer to KBD as a trustee throughout this memorandum.

ample authority for this Court to consolidate the estate of KBD with KBM. October 31, 1988, Order at 7. The result Judge See reaches may be close to the practice forbidden by *Ozark Restaurant*, but it is distinctly different. Of some interest is the fact that in many of the cases cited by the parties or reviewed by the court the request for substantive consolidation was instituted by a trustee or debtor. *See, e.g., Matter of Lewellyn*, 26 B.R. 246 (Bkrtcy.S.D.Iowa 1982); *In re Flora Mir Candy Corp.*, 432 F.2d 1060 (2nd Cir.1970); *In re Vecco Const. Industries, Inc.*, 4 B.R. 407 (Bkrtcy.E.D.Va.1980); *In re Auto–Train Corp., Inc.*, 810 F.2d 270 (D.C.Cir. 1987). The substantive consolidation order caused KBM's property to become "property of the estate" as defined in § 541. At that point, the trustee acquired standing under §§ 547 and 548 to pursue the money as a preference and/or an avoidable transfer. Retroactive application of the consolidation order was necessary to bring the transfer within the one year limitation contained in those sections. In short, this court agrees with the bankruptcy court's conclusion that *Ozark Restaurant* does not prohibit a trustee from pursuing an action for substantive consolidation.

■ As to the merits of the decision to apply the consolidation retroactively, this court is satisfied that the bankruptcy court's decision was proper under the *Auto–Train* standard. The *Auto–Train* court stated the test as follows:

Because the consolidation proceeding will already have established a substantial identity between the entities to be consolidated, this inquiry begins with the proponent of *nunc pro tunc* making a showing that *nunc pro tunc* is necessary to achieve some benefit or avoid some harm. Following this showing, a potential preference holder may challenge the *nunc pro tunc* entry of the consolidation order by establishing that it relied on the separate credit of one of the entities to be consolidated and that it will be harmed by the shift in filing dates. If a potential preference holder meets this burden, the court must then determine whether the benefits of *nunc pro tunc* outweigh its detriments.

810 F.2d at 277. *Nunc pro tunc* consolidation would make it possible for a trustee to pursue an action under §§ 547 and 548, so the first requirement, benefit to the estate, is satisfied. The bankruptcy court then considered whether Jones relied on the independent credit of KBM when dealing with it. The court found, and the findings are not clearly erroneous, that Donald Jones, a partner of Jones and Associates as well as an insider of KBD and KBM, was aware that "KBD and its entities had a business practice of commingling bank accounts." October 31, 1988, order at 4. Further, as more fully set forth in the order substantively consolidating KBD and KBM, KBM had virtually no independent existence from KBD. For example, KBM had no employees, offices or separate bank account. KBM derived all of its income from dealings with KBD or other affiliated companies. June 14, 1988, order at 4–5 (Doc. # 9). Mr. Jones, whose testimony was the only evidence offered by Jones and Associates, was unable to say whether he relied on the separate credit of KBM. Indeed, the contract between KBM and Park Place specifically allows KBM the unrestricted right to transfer its rights and duties "to any Kroh interest." The bankruptcy court's conclusion that Jones did not rely on KBM's separate credit is proper on these facts, and the *nunc pro tunc* order is therefore justified under the *Auto–Train* standard.

The decision of the bankruptcy court is AFFIRMED.